## JAMES STANDLEY v. MILES & ADAMS.

1. GUARANTY: WHEN PRIOR REQUEST TO GIVE CREDIT A SUFFICIENT CONSIDERA-
TION.—As a general rule, a guaranty of a pre-existing debt of another, is not
binding on the guarantor, without a new and independent consideration to sup-
port it; but when the guaranty, though executed after the debt was created, is
connected with, and the inducement to the original credit, or the result of a
previous promise by the guarantor, upon the faith of which the credit was
obtained by the original debtors, it requires no new or independent considera-
tion to render it valid, but it is a part of the original transaction, and the con-
sideration upon which the credit was given. See *Leonard* v. *Vredenburg*, 8
John. R. 29 ; 3 Kent. Com. 123.

2. SAME: RULE FOR CONSTRUING.—Where the language of a guaranty is of
doubtful import, the true intention must be obtained by reference to the facts
and circumstances accompanying the execution of the instrument. See *Drum-
mond* v. *Prestman*, 12 Wheat. 515 ; *Bell* v. *Bruen*, 1 How. U. S. 169–186 ;
*Lee* v. *Dick*, 10 Pet. 482–493.

3. SAME: CASE IN JUDGMENT.—The defendant gave a verbal authority to C. &
S. to promise for him that he would guaranty any debt they might contract;
they informed the plaintiffs of this, and promised them that they would pro-
cure the guaranty of the defendant for the debt; thereupon, and in considera-
tion of the promise, the defendant extended a credit to C. & S., to the amount
of $3600. Soon afterwards the plaintiffs sent the following instrument to the
defendant, for his signature : " Messrs. M. & A., New Orleans, Gent.: I hereby
agree to guaranty the payment of all drafts *drawn* on your house by Messrs.
C. & S. of Sidon, Miss." This instrument the defendant refused to sign, but
executed the following, and sent the same to the plaintiffs : " Messrs. M. & A.,
New Orleans, Gent.: Your form of a letter of credit that you wished me to
give Messrs. C. & S. of Sidon, is before me. I am not disposed to give my
name, only for some specified amount, say for three thousand dollars. The above
amount I will underwrite for the house of C. & S. at Sidon." Held, 1st. That
the promise made by the defendant through C. & S. to plaintiffs, to guaranty
the debt, was a sufficient consideration to support the guaranty afterwards
executed. 2d. That in construing the guaranty, reference might be made to
the form of a letter of credit sent by plaintiffs to defendant, for his signature.
And 3d. That the guaranty was intended to secure the debt, which had already
been created on the faith that the defendant would execute it.

4. NEW TRIAL : NOT GRANTED WHEN JURY HAVE ACTED ON THE CREDIBILITY OF A
WITNESS.—Where the credibility of a witness has been fully and fairly sub-
mitted to a jury, and determined by them, their verdict on that point will not
be disturbed by this court.

Standley v. Miles & Adams.

ERROR to the Circuit Court of Carroll county. Hon. James S. Johnson, presiding as special judge.

The substance of the declaration and the evidence, is fully set out in the opinion of the court. It is necessary to state further, that the evidence shows that the debt contracted by Chambers and Standley, on the 5th February, 1855, amounted to $3600, and that, upon overruling defendant's demurrer, he pleaded the general issue, verified by his oath. The following instructions were given in behalf of the plaintiffs.

1. That if the original credit was given at the request of Standley, and upon the faith of his verbal promise to guarantee or pay the debt, it is a sufficient consideration to support the guaranty afterwards executed.

2. That it was unnecessary for Standley to have made the request or promise mentioned in the first instruction, in person; it is sufficient if he authorized Chambers to make it, if Chambers did actually do it, before the original credit was given.

3. That whilst it is true, before a guarantor can be held liable on his guaranty, that the person to whom it is directed should accept it, and give notice to the guarantor of such acceptance, yet the acceptance and notice need not be proven by direct evidence; it is sufficient if it be established to the satisfaction of the jury by circumstances.

4. Credit given on the faith of a guaranty is an acceptance of it.

5. That whilst it is true, as a general proposition, that a guaranty or other instrument can have no force or effect before its existence, yet this will not prevent the defendant from being liable on the guaranty for a debt created before its existence, if such debt were created under the circumstances mentioned in the first instruction.

6. That if the jury should believe that the guaranty in question was written and signed by James Standley, Jr., at the request of the defendant, and as a mere form, yet if the defendant afterwards issued it, or delivered it as his own document, it will be as binding on him as if written by himself, and for the purposes of delivery.

7. A subsequent recognition by the defendant of his liability on the guaranty, is evidence from which the jury are authorized to infer

that it was properly executed and delivered by him in the first instance.

8. The jury are the sole judges of the weight of evidence, and the credibility of witnesses.

9. That it is sufficient, within the meaning of the sixth instruction given for defendant, that the credit should be given on the faith of a promise, made by defendant before it was given, that he would execute the guaranty sued on.

For the defendant the court gave the following instructions:—

1. If the jury believe from the evidence, that the instrument sued on was not delivered to plaintiff, either by the defendant or by one authorized by him to do so, then the law is for the defendant, and they will so find.

2. That the guaranty, like every other written contract, only takes effect from the time of its execution, and cannot have an effect before its execution.

3. That a past consideration will not support a contract of guaranty.

4. That to enable the plaintiffs to recover, they must prove that said instrument sued on was accepted as a guaranty by them, and in the absence of such proof, the jury must find for the defendant.

5. That to enable the plaintiff to recover, they must prove that they gave the defendant notice of said acceptance.

6. That the plaintiff must show that the credit was given on the faith of the guaranty sued on ; and in the absence of such proof, the law is for the defendant.

7. That where a verbal promise to guarantee the debt of another, and subsequently a written guaranty is given, in compliance with the said promise, then the plaintiffs suing on the guaranty, must prove that said verbal promise was made to them directly, or to their agent.

The verdict and judgment being for plaintiffs, the defendant moved for a new trial, which was overruled, and he sued out this writ of error.

*Helm* and *Wright*, for plaintiff in error.

The first question to which we call the attention of the court, is raised by the second and third assignment, as causes of demurrer

to the amended complaint. That question is, can such an instrument as the one sued on, have a retrospective operation, without some new consideration? In other words, when the verbal promise to guarantee, and the written guaranty, are *not contemporaneous* each with the credit given, but the verbal promise is made at one time, when the credit is extended, and some time afterwards the guaranty is reduced to writing and delivered, whether such guaranty has sufficient consideration to support it as a valid contract?

We contend that such a guaranty is without consideration, and void.

The case of *Wren* v. *Pearce*, 4 S. & M. 91, was an undertaking where the credit was extended *contemporaneous with the execution of the guaranty*. The court sustains the contract in that instance; but by implication, as clear almost as an express decision, indicates that the decision would have been different, unless the execution of the guaranty had been contemporaneous with the " giving credit."

Quoting from Chancellor Kent, 3 Com. 122, the court holds, that " when the guaranty or promise, though collateral to the principal contract, is made at the same time with the principal contract, and becomes an essential ground of the credit given to the principal debtor, and also of the guarantor," &c., it is then valid. This principle, the court adds, covers the present case ; because, in the declaration, the guaranty is averred to have been made at the time of the delivery of the goods, and the promise to guarantee before.

In the case under consideration, the reverse is true,—the credit was extended, as per allegations of the complaint, when the verbal promise was made, and some months before the guaranty had any existence. We contend, therefore, that the reasoning in this case clearly sustains our position. 1 Peters, 476.

"A guaranty, like every other written contract, only takes effect from the time of its execution, and cannot be held to have influenced a party to have given a credit on a draft, which was drawn before the execution of the guaranty." *Crowder* v. *Dick*, 24 Miss. 37.

A past consideration will not support a guaranty. *Weed* v. *Clark*, Sanf. Sup. C. Reps. 31; 1 Eng. Law & Eq. R. 236; 1

Parsons on Contracts, title "Consideration," 496 ; *Beller* v. *Moore*, 3 McLean, 387 ; Smith's Mercantile Law, 567.

But, if we should be mistaken in this view, the next point to consider is, does the instrument sued on, by its terms, refer to credits thereafter to be given, or to credits already extended ?

We contend that the instrument has no retrospective word in it; that no promise to pay a pre-existing debt can be gathered from a fair construction of its terms. The evident intendment of its language is this : if you are willing to give them credit to the amount of three thousand dollars, I am willing to guarantee the payment to you of that sum.

The fact that Standley said nothing about guaranteeing a preexisting debt; that Miles & Adams made no objection to the amount of the sum guaranteed, show conclusively that the guaranty was intended to cover future, and not past credits, because the debt already contracted, was for considerably more than the amount guaranteed.

But we must look to the instrument itself, and interpret it according to the language used. From anything appearing on its face, it will hardly be contended that a past transaction was referred to. It must be construed according to the natural import of its language. "If," says a very lucid writer on the law of contracts, "an instrument is intelligible and certain, when its words are taken in their common or natural sense, all of its words shall be so taken, unless something in the instrument itself gives to them distinctly a peculiar meaning, and with this meaning the instrument is intelligible and certain." 2 Parsons on Contracts, 76.

There is certainly nothing in this instrument itself, which requires any peculiar interpretation to be given to its words ; and those words, in their common and natural sense, do not refer to a past transaction.

In considering the testimony :

It is contended that the evidence distinctly shows that Miles & Adams did not rely on any promise made by James Standley, Sen. The promise relied on by them was made by Winess Chambers, and which must have been a promise by Chambers to procure the guaranty of Standley (see deposition of West, clerk of Miles & Adams), and not a promise to guarantee by Standley himself.

Standley *v.* Miles & Adams.

The third and fourth assignments of error, are based upon a refusal of the court to grant a new trial.

1. Because the court erred in instructing the jury.

The first, second, and ninth instructions are objectionable, because they propound the law to be, that a prior verbal promise to guarantee, when, and upon which, credit is given to a third person, is sufficient consideration to support the guaranty made some time afterwards, and not contemporaneous. If we are right in the view taken in considering the first assignment of error, these instructions did not propound the law correctly, and a new trial should be granted.

2 and 3. Reasons why a new trial should have been granted are, that the verdict was contrary to the evidence, and not supported by evidence.

Under this head the testimony was extensively reviewed, and it was contended that this ground of exception was thereby fully sustained.

*J. Z. George,* for defendant in error.

I. The main question in this case arises on the demurrer of the defendant to the declaration, in respect to the consideration of the guaranty.

I support the declaration on two grounds :

1st. By the common law, a past or executed consideration is sufficient to support the contract, if the original credit was given on the request of the promisor ; and 2d. That this guaranty is to be governed by the laws of Louisiana, and by that law a past consideration is all that is required.

1. It is admitted, that as a general rule, that a "past or executed consideration, is not sufficient to sustain a promise founded on it, unless there was a request for the consideration, previous to its being done." But if the original consideration was upon the request of the promisor, it is laid down by the text writers, that then the subsequent promise unites with the previous request, and is supported by it, and is consequently valid. 1 Parsons on Cont. book 2, ch. 1, § 216, p. 391, 392 ; Chitty on Contr. marginal p. 57 ; 1 Saund. R. 264, n. 1 ; Theobald on Principal and Surety, 4 ; Burge on Suretyship, 14.

And this doctrine is supported by the clearest reasoning, and the plainest principles of justice.

It is not contended that every moral duty will support a subsequent express promise to discharge or perform it, but there is a class of moral duties which are themselves incapable of enforcement by legal process, but yet do constitute a sufficient consideration for an express promise to perform them. Wherever a party is under a pre-existing obligation by natural law to do a certain act, and which duty would be enforced but for the intervention of some positive rule of law, which exempts the party from its performance, then an express promise to do the act will be binding; as where a debtor promises to pay a debt, barred by the Statute of Limitations, or from which he has been released by bankruptcy; or where an adult makes an express promise to pay a debt created during his minority; and I might add (which is the case at bar), where a party failed to bind himself legally in the first instance, by reason of a non-compliance with the Statute of Frauds. See *Mills* v. *Wyman,* 3 Pick. 209.

In all of the above instances (omitting, for the present, the last), it is clearly settled, by authority, that the party being under a moral obligation to do the act, and being only discharged from legal liability on that account, by virtue of a positive rule of law, which exists for his benefit, he may waive the protection of such rule by an express promise to do such act. Here, then, is a case, in all respects strictly analogous to those above stated, and falling within the principles which govern them. Here is the previous request to give credit, and a promise to guarantee the payment of the debt created on the faith of it, which imposes a moral obligation to comply with it; the performance of which would be enforced by legal process, but for the existence of a positive rule of law, established for promisor's benefit, and here also is the subsequent express promise to redeem the prior verbal request.

There is another view of this principle equally effective to sustain the promise. A party failing to comply with a promise which is invalid by reason of the Statute of Frauds, and thereby damaging an innocent party, who trusted and acted on the faith that such promise would be redeemed, has been held liable to perform an express promise in writing, afterwards made to indemnify against

such damages. *Farnham* v. *O'Brien*, 22 Maine R. 475; *Warren* v. *Whitney*, 23 Ib. 561.

And this court has even gone further, and decided that the promisor in such a case is liable for his fraudulent conduct in refusing to perform the agreement. *Welsh* v. *Lawson*, 32 Miss. R. 170.

If, then, as held in Maine (the doctrine being stronger in this State), the promisor would be liable upon an express promise to pay such damages, as have ensued from his refusal to comply with his engagement, which was invalid by the Statute of Frauds, it would seem too clear to admit of argument, that a promise in writing, made to redeem the original invalid promise, and thereby to prevent damage from ensuing to the promisor, would be binding.

But I am not compelled to rely upon this principle alone for a valid consideration of the guaranty. The request to give credit, and the promise to be responsible, alleged to have been made in New Orleans, and by the law of Louisiana there is no Statute of Frauds requiring that a promise to pay the debt of another, should be in writing; and hence the original promise and request being valid and binding, there can be no doubt,—even upon the principle insisted on by plaintiff in error,—that the consideration is a valid one. See *Flood* v. *Thomas*, 5 Mart. (N. S.) 360–2.

The guaranty being directed to a party in New Orleans, is governed by the law of Louisiana. See *Bell* v. *Bruen*, 1 How. U. S. R. 182.

II. The motion for a new trial was properly overruled.

The grounds assigned for the motion in the court below are:

1. Because the court erred in giving instructions.

2. Because the jury found contrary to evidence.

3. Because the verdict is not supported by the evidence.

The first ground cannot be considered by this court, because no exceptions were taken to the ruling of the court in that behalf. All the instructions asked for by defendant were given, and the propositions contained in the plaintiff's instructions will be found discussed in other parts of this brief.

1. The proof shows that C. & S. had no credit in New Orleans, in the fall of 1854, and for this reason, that Chambers wished to stop business, and so informed defendant, who objected, and said he would furnish the credit. It is also shown, before Chambers

went to New Orleans (in the trip during which the debt to plaintiff was contracted), that he saw defendant in reference to his proposed visit to that city, to make a new business engagement or arrangement, and that defendant then told him he would give C. & S. credit in New Orleans; "that he would guarantee the debt he might contract, *and sent him (witness) to New Orleans, to procure credit on that basis.*" That Chambers went to New Orleans, and procured the credit from the plaintiffs, *informing* them of what passed between him and defendant, and that on the faith thereof plaintiff gave the credit. "That the reason he did not take the letter of credit then was, that it was not known with what house a business arrangement could be made, and that defendant did not tell witness to call on plaintiff or any particular house for credit."

Upon this evidence, and on a letter written by plaintiff to C. & S. (which will be hereafter noticed), it is insisted here, on behalf of plaintiff in error, as it was insisted below, that the promise of Standley was made *to Chambers, and not to Miles & Adams.* Upon the other hand, we contend that Standley constituted Chambers his agent, and authorized him to go to New Orleans, and promise his guaranty to any house which would grant them credit. And the question thus at issue between the parties, was fairly submitted to the jury, by the instructions, and under such circumstances, that, unless they believed this hypothesis of plaintiff below, they could not have found the verdict which they rendered.

This question being necessarily involved in the verdict, and the jury having determined it in our favor, I might rest this part of the case on their verdict alone, since it cannot be said that the evidence preponderates against the verdict on this point, or that it is without evidence. On the contrary, the evidence fully sustains the verdict.

The defendant is the father of Mr. Standley, of the firm of C. & S.; had a personal interest in its success; the firm was without credit in New Orleans, and Chambers wanted to stop business, and defendant desired it to go on, promising to furnish the credit and to guarantee their debts. A new house in New Orleans was necessary, and new arrangements were to be made. It was not known what house in New Orleans would extend credit. Chambers proposes to visit New Orleans, for the purpose of making an arrange-

ment and procuring credit, at the instance and by the desire of defendant, who again states that he would furnish the credit in New Orleans, and that he would guarantee such debts as he might contract, and "sent Chambers to New Orleans to procure credit on that basis."

If we look at the object the defendant had in view,—that C. & S. should go on, upon the credit of his name,—and the means necessary to accomplish it,—the house being insolvent and without credit, except upon his liability to pay their debts,—it seems too clear for controversy, that the defendant intended to empower Chambers to promise for him that he would be responsible. For how could Chambers make the arrangement, procure the credit, and contract the debts, which he (defendant) sent him to New Orleans to do, except upon the assurance or promise that the defendant would guarantee for C. & S. And if such assurance and promise were necessary to be made in New Orleans, was it contemplated that they should be made without authority, or with it? If without authority, then the defendant expected and intended that credit should be obtained upon the raising of hopes which were not to be realized; and if with authority, then Chambers was his agent, and the hypothesis of plaintiffs is sustained. This establishes the authority conferred on Chambers, to make the promise that defendant would give his guaranty. Then, did he exercise the authority? Chambers said he did; and the jury have determined that he is to be believed.

But it is insisted, that the letter of Miles & Adams to C. & S., introduced by defendant, shows that the communication made by Chambers, on this point, to Miles & Adams, was a mere pledge or promise of Chambers, that the defendant would guarantee, and not the execution of an authority conferred on him by defendant. But such is not the fair construction of the letter. Whilst the letter asserts a pledge of honor, on the part of Chambers, that defendant would guarantee the debt, yet it does not pretend to set out all that was said by Chambers.

This letter had a twofold object: 1st, to press upon C. & S. to pay the debt due plaintiffs; 2d, to communicate to them that defendant had denied his guaranty. The first was the main and important object,—since, if the debt were paid, there was no use

for the guaranty. The letter was written to secure a payment of the debt by C. & S., and not to state the grounds of the liability of defendant; and therefore such language and expressions were used as were calculated to incite C. & S. to discharge their liability. And for this reason reference is made to the promise of Chambers to meet the acceptances by shipments of cotton, and his pledge of honor, that defendant would guarantee the debt, the execution of which defendant had denied.

It is impossible that the verdict of the jury on this point, based upon the positive sworn statements of Chambers, should be over-. turned by this loose statement of plaintiffs, made under the circumstances and for the purpose before mentioned. This letter is at best but circumstantial evidence, and the jury were the proper judges of its weight.

2. But it is said that the written guaranty is prospective in its operation, and does not apply to the debt of C. & S. to plaintiffs, created before its execution. The language of the guaranty does not, in express terms, refer to past or future transactions.

"Instruments of this sort are not to be construed with strict technical nicety; they are written usually by merchants, and rarely ever with caution or precision, and they refer in most cases (as in the present), to transactions and dealings in the briefest and most casual manner, without any regard to form. Every instrument of this sort ought to receive a fair and reasonable construction, according to the import of its terms, and be construed according to what is fairly to be presumed to have been the understanding of the parties; and this presumption is to be ascertained from the facts and circumstances accompanying the transaction." *Lee* v. *Dick*, 10 Peters R. 493; *Bell* v. *Bruen*, 1 How. U. S. 286, 287.

In construing this instrument, the court will admit evidence of the surrounding circumstances, so as to put themselves in the same position as the maker, and the instrument will be read from this stand-point. 3 Phil. on Ev. Cowen & Hill's Notes, 1384 and 1399; 1 Greenl. Ev. §§ 282, 287, 288, 289. See also Chitty on Cont. 458; *Storer* v. *Freeman*, 6 Mass. 438; *Le Farrant* v. *Spencer*, 1 Ves. Sen. 97; *Woodworth* v. *Ruggles*, 6 Pick. 63; *Reno's Executor* v. *Davis*, 4 Hen. & Munf. 283; *Puller's Executor* v. *Puller*, 3 Randolph, 83.

Adopting this rule, there can be no doubt that the guaranty refers to the antecedent transactions. Standley agreed to guarantee the debt; credit was given on the faith of such guaranty; of this Standley was informed, and he again agreed to carry out the promise, and thereupon executed the guaranty. Unless he intended a fraud on plaintiffs, and to act in violation of a promise which he was professing to redeem, it is impossible that he could have intended to exclude the debt created on the faith of the guaranty. It is true that the guaranty is informally drawn, and refers in the briefest possible manner to the transactions of the parties; but for this reason the court will construe it according to what is to be presumed was the understanding of the parties at the time, to be derived from all the facts and circumstances accompanying the transaction.

To render this construction still more certain, I ask the attention of the court to the form of a guaranty sent by plaintiffs for defendant's signature, and to which he refers in the document under consideration. He acknowledges its reception, and states that it is before him at the time of the writing, and objects to it only upon the ground that it is unlimited, whereas he is only willing to be bound for $3000. The debt which had been created amounted to $3600, the amount of which had been communicated to him by Chambers. The guaranty sent by plaintiffs was as follows:

"Messrs. Miles & Adams, New Orleans. Gent.: I hereby agree to guarantee the payment of all debts *drawn* on your house by Messrs. Chambers & Standley, of Sidon, Miss."

The term "drawn" refers to past time, and not to the future or present.

Construing the two instruments together, it is certain that he referred to the antecedent indebtedness.

HANDY, J., delivered the opinion of the court.

This action was brought by the defendants in error, upon the guaranty in writing, of the plaintiff in error.

The case was tried upon the amended declaration of the plaintiffs below; and the first ground of error here insisted upon, presents the question of the sufficiency of the declaration.

The declaration avers in substance, that the plaintiffs were mer-

chants in New Orleans, in February, 1855, and that the defendant requested them to extend credit to, and accept the bills of, Chambers & Standley, a mercantile firm in this State, and furnish them goods and merchandise, and advance them money; and on the 5th February, 1855, that the defendant promised the plaintiff that he would execute his guaranty to them, to secure the debt to be so contracted by Chambers & Standley; that, on the faith of the said promise, the plaintiffs accepted the bills of Chambers & Standley, and paid the same, dated in February and March, 1855; and on the 29th March, 1855, that they sold and delivered to Chambers & Standley goods and merchandise, the amounts of these several items and their dates being stated; and that, on the 23d March, 1855, the defendant, in consideration of his said promise and request, made his guaranty in writing, directed to the plaintiffs, whereby he undertook and promised the plaintiffs, to guarantee and be accountable to them for any balance of the debt aforesaid of Chambers & Standley, to the amount of three thousand dollars, which might remain unpaid by them; and that on the 31st August, 1855, at the close of the business season, and of their business with Chambers & Standley, they were indebted to the plaintiffs in the sum of $2258 26, the balance unpaid upon the debt contracted as aforesaid. It is further averred, that the plaintiffs received the said letter of guaranty about the 1st May, 1855, and accepted the same, of which the defendant had notice.

The second count is to the same effect, except that it does not aver notice of the acceptance of the guaranty to the defendant, and it avers that Chambers & Standley were insolvent on the 31st August, 1855, and have failed to pay the amount due the plaintiffs upon demand.

The objection now urged, in support of the demurrer, is, that the declaration does not show that the written guaranty was made upon a sufficient consideration to be binding in law; and in considering the objection, we must, of course, look alone to the averments of the declaration, without regard to the evidence subsequently developed, upon the trial of the case before the jury.

The instrument sued on is not set out *in hæc verba* in the declaration, nor made part of it; and the averments as to its execution are, that on the 23d March, 1855, in consideration of his previous

promise that he would execute his guaranty to them to secure the debt which Chambers & Standley contracted with the plaintiffs, and which they contracted on the faith of that promise, the defendant made his guaranty in writing of that date, directed to the plaintiffs, whereby he undertook and promised the plaintiffs to guarantee, and be accountable to them, for any balance of the debt so contracted, to the amount of $3000, &c. The objection appears to be, that no special consideration is averred for the execution of the guaranty, and that no consideration in writing for the same is shown; and, therefore, that the instrument is invalid under the Statute of Frauds.

If the instrument had been executed for a pre-existing debt, which was complete before its execution, and contracted without any reference to it, as a security which the defendant had agreed to give for the debt, and in consequence of which the debt was contracted by the original debtors, there would be force in the objection. But, according to the averments of the declaration, the original debt of Chambers & Standley was contracted with the plaintiffs, upon the defendant's promise that he would secure it by his guaranty; and after it was contracted, he executed the guaranty sued on, in accordance with his original agreement. In such a case, it is clear, that the guaranty forms a part of the original contract between the creditor and the parties with whom he is dealing, and is supported by the consideration upon which the original indebtedness was founded. Where the guaranty, though collateral, is connected with, and the inducement to, the original credit, or the result of a previous promise, upon the faith of which the credit was obtained by the original debtors, the guaranty requires no new and independent consideration to give it force, but is part of the original transaction, and the consideration upon which the original credit was given. Hence such a case is not within the statute. *Leonard* v. *Vredenburgh*, 8 John. Rep. 29; 3 Kent's Com. 123. And this appears to be the character of the case, as stated in the declaration. The demurrer was, therefore, properly overruled.

The next ground of error relied on, is the overruling of the motion for a new trial. This motion was based upon several grounds, which we will proceed to consider.

The first of these is, that the court erred in giving instructions to the jury.

The objection to the instructions appears to be, that the question whether the guaranty sued on was intended by the maker to cover the debt previously contracted by Chambers & Standley with the plaintiffs, was not sufficiently submitted to the jury, and that the instructions for the plaintiffs assumed that such was the intention of the defendant in giving the guaranty.

This view proceeds rather upon a literal and rigid construction of the instructions, than upon their spirit. Though the instructions complained of, are not as full as they might have been in this particular, it is evident from the whole of them, that the question whether the guaranty was made with reference to the original indebtedness, was sufficiently presented to the jury.

The next two grounds of the motion are, in effect, the same,— that the verdict is contrary to the evidence; and, in considering this, it is necessary to take into view the substance of the evidence, as it is presented by the bill of exceptions.

The principal witness in behalf of the plaintiffs was Benjamin F. Chambers, of the firm of Chambers & Standley, who testified in substance that, from misfortunes which befell that firm in the fall of the year 1854, it was without credit in New Orleans, and unable to carry on business, and that the witness informed the defendant, who was the father of Standley, one of the firm, that they would be compelled to stop business; that the defendant objected to their stopping business, and said he would furnish them the necessary credit; that witness went to New Orleans about the 1st February, 1855, with a view to obtain credit and make purchases, in order to continue the business of the firm, and just before he went there that he saw the defendant in relation to his making a business arrangement for the firm, with some new commission house in that city, the house with which they had formerly done business having failed, and that the defendant said that he would give the firm credit in that city, and would guarantee the debt he might contract there, and that he sent him to procure credit on that basis. That he accordingly went to New Orleans, and contracted the debt upon which this suit is founded, the witness then informing the plaintiffs of what had passed between the witness and the defendant, pro-

mising the plaintiffs if the credit was extended, that the debt should be promptly paid, and that it should be secured by the guaranty of the defendant, and that the defendant had promised to give the firm of Chambers & Standley an unlimited letter of credit; and on the faith of these assurances, that the plaintiffs gave the credit. That the reason why the witness did not take the guaranty with him, was that it was not then known, with what house the arrangement could be made. That when the credit was obtained, it was understood between the plaintiffs and witness, that the witness was to send them the defendant's guaranty so soon as he got home. That in a few days after he returned home, about the last of February or first of March, the plaintiffs sent a blank letter of guaranty for the defendant to sign, and in a few days thereafter, that the witness went to the defendant's house, and delivered him the letter of guaranty for his signature, informing him of the arrangement which witness had made with the plaintiffs, and of the credit which they had extended to his firm; and that the defendant expressed no unwillingness to sign the paper, but said as there was no ink in the house, that he would get some, and have it signed by the time witness returned. That witness called on his return, several days after, and that the defendant gave the same reason as before for not having signed it, but said he would go to his son James's and sign it, and send it down in a few days. That some time thereafter, the guaranty sued on was sent by the defendant to the house of Chambers & Standley, and was received by his partner, Standley, while witness was from home; and some days after its receipt, that witness sent it to the plaintiffs at New Orleans, and witness never saw or heard of any letter accompanying it, stating that it was only a form, and was not intended to be binding on the defendant. He further stated that the defendant always, in speaking of his liabilities for Chambers & Standley, during the winter and spring of 1855, and before they stopped business, recognized the debt sued for as one of his liabilities.

On cross-examination, he stated that he never told James Standley, Jr., that he had no letter of credit, and wanted none. That when he went to New Orleans, the firm of Chambers & Standley had no credit, and that the defendant had before given them credit with commission houses in New Orleans. That neither the defend-

ant nor James Standley, Jr., ever notified witness not to send the letter of credit sued on to the plaintiffs, and that he never told James Standley, Jr., that he had not sent it. He further stated, that the defendant did not tell him to call on the plaintifis, nor upon any particular house, for credit.

It was further proved, that on the 17th February, 1855, the plantiffs sent to Chambers & Standley a letter of guaranty, to be signed by the defendant, and returned to them, in the following form:—

"Messrs. Miles & Adams, New Orleans. Gent.: I hereby agree to guarantee the payment of all drafts drawn on your house by Messrs. Chambers & Standley, of Sidon, Miss.

"Yr. obt. servt."

And that the guaranty sued on was inclosed, by Chambers & Standley, in a letter to the plaintiffs, dated 28th April, 1855, and was received a few days thereafter, and is as follows:—

"BLACK HAWK, March 23, '55.

"Messrs. Miles & Adams, New Orleans, La. Gent.: Your form of a letter of credit that you wished me to give Messrs. Chambers & Standley, at Sidon, is before me. I am not disposed to give my name, only on some specified amount, say for three thousand dollars. The above amount I will underwrite, for the house of Chambers & Standley, at Sidon.

"Respectfully yours,        JAMES STANDLEY."

West, the clerk of the plaintiffs, testified that when the credit was given to Chambers, he gave a verbal promise that he would send to the plaintiffs the guaranty of the defendants so soon as he could return home.

On the part of the defendant, James Standley, Jr., testified, that he was at the defendant's house some time in March, 1855, and that the defendant showed witness a letter of credit for an unlimited amount, sent to defendant by the plaintiffs for his signature, and which the defendant refused to sign; that defendant asked witness to draw up a form of guaranty for the sum of three thousand dollars, which witness did, and that the instrument here

sued on was the one drawn up by him, and signed by him; that a few days thereafter, he learned that the same had been sent to Chambers & Standley, and fearing that witness might be made liable, he went to see Chambers & Standley, and told Chambers that the instrument sent to them by the defendant was not signed by the defendant, but was drawn up by witness as a form, to see if it would answer his purpose, and that they must not send it to the plaintiffs; and that Chambers said he had not sent it, and would not send it; that it would not answer their purposes, but that he would send down all the cotton he could control; that on his way to see Chambers & Standley, he stopped at defendant's house, and told him he was going to see Chambers & Standley, and that defendant did not then send any message in relation to the guaranty, or request him to stop it from being sent; that Chambers stopped at witness's house on his way to New Orleans, and that witness asked him if he had any letter of credit to any house, and he replied that he had not, nor did he want any; that defendant did not tell witness to tell Chambers & Standley not to send to the plaintiffs the letter here sued on.

The following letter was also in evidence, on the part of the defendant:—

"New Orleans, Sept. 26, 1855. Mess. Chambers & Standley, Sidon, Miss. Gent.: Inclosed you will find your account, showing a balance due on the 1st inst. of $2255 26. At the time your Mr. Chambers obtained our acceptances, he pledged his honor that they should be met by shipments of cotton, and that the father of your Mr. Standley would guarantee their payment. You will see that they have not been met by shipments of cotton, and Mr. Standley now denies his guaranty. Your Mr. Chambers, on the 28th April last, inclosed us a letter from Mr. J. Standley, saying that he would stand for $3000, a copy of which is herewith inclosed. On the 17th July, Mr. J. Standley writes us, denying that he ever wrote such a letter. How is this? We certainly expect this matter to be speedily arranged. Be good enough to let us hear from you, at your earliest convenience.

"Very respectfully, MILES & ADAMS."

The first position taken in behalf of the plaintiff in error, as showing the insufficiency of the evidence to support the verdict, is, that the instrument of guaranty sued on is plainly prospective in its terms, having no reference to any indebtedness already contracted by Chambers & Standley, and that it was not competent to show, by parol evidence, that it was intended to cover debts contracted before its date.

Whilst it is true, that the terms used in the guaranty would be fully applicable to indebtedness, subsequently to be contracted by the parties for whom it was given, it is also, without violence to its language and true spirit, susceptible of the construction that it was intended to embrace subsisting indebtedness. It makes reference to the letter of guaranty transmitted to the defendant by the plaintiffs for execution, which expressly covered *drafts then drawn* by Chambers & Standley on the plaintiffs, without specification of the amount,—expresses his unwillingness to give his name except for a specified amount, three thousand dollars, and concludes,—" the above amount I will underwrite for the house of Chambers & Standley." The only words used, showing a prospective intention, are the words, *I will underwrite;* and it is plain that they do not necessarily exclude an intention to become liable for indebtedness then subsisting, to the amount specified, but may well be taken to mean, *I agree to underwrite,* or *I am willing to underwrite.* And this appears to be the most natural construction of the instrument, under the circumstances. He was applied to, to execute a guaranty *for all drafts drawn* by Chambers & Standley; he declines to give the guaranty except to the amount of $3000, and says, " he will underwrite" for that amount. For that amount of what? Certainly of the *drafts drawn* by Chambers & Standley. This is evident, when we take the guaranty sued on, in connection with the one which he was required to execute, and the circumstances attending the transaction.

If the language employed be uncertain or doubtful in its import, the true intention must be ascertained, by reference to facts and circumstances accompanying the execution of the instrument; and this may be done without a violation of any rule of law in relation to adding to or contradicting written instruments. *Drummond* v. *Prestman,* 12 Wheat. 515; *Bell* v. *Bruen,* 1 How. (U. S.) 169,

186; *Lee* v. *Dick et al.* 10 Peters, 482, 493. It was certainly proper to consider the letter of guaranty which the party was required to sign, in order to understand general terms used in that which he executed instead of it. And by that evidence alone, the construction, that the guaranty sued on had reference to subsisting liabilities, is justified. But if we refer to the facts stated by the witness Chambers, which were submitted to be weighed by the jury, all room for doubt upon the point is removed.

This ground for the motion cannot, therefore, be maintained.

It is, however, insisted that the facts of the case show that the guaranty was prospective.

First. It is urged, that the fact, that the plaintiffs did not object to the guaranty when they received it, as it covered only a part of the debt due them by Chambers & Standley, amounting to about $3600, is irreconcilable with its being executed as security for the past indebtedness. But this conclusion would not be the only one to which these facts might lead. It would appear, according to the state of case relied on by the plaintiffs, that they had given credit to Chambers & Standley, on the faith of a parol promise of the defendant to guarantee the amount. That promise was not obligatory on him until reduced to writing; and when afterwards called upon to give his written obligation for the amount, he refused to do so, except for a specified amount. Under such circumstances, it would have been the height of folly in the plaintiffs to decline to accept his guaranty for the amount specified; for it was all the security they could get from him. This appears to be a sufficient reason for their acceptance of the guaranty, for an amount somewhat less than the indebtedness for which they claim that it should have been given.

Again. It is said to be strange and extraordinary, that the defendant did not give the letter of credit when Chambers went to New Orleans, if he intended to guarantee the payment of the debts contracted by him on that occasion. There is certainly force in this view; and it would appear to be unreasonable, if he intended to guarantee the debt then contracted, that he should authorize Chambers to state that he would guarantee the amount, instead of giving a letter of credit; and the difficulty is not entirely removed by the explanation that the house from which the credit would be

obtained was not known; for he might have given a general letter of credit to any house from which the credit might be obtained, as well as a general verbal promise to give a guaranty.

But this was a mere question of fact, to be determined by the jury from the probabilities of the matter, and from the positive evidence before them. However unusual the transaction might appear to be, if they gave credit to the testimony of the witness Chambers, they could not have avoided coming to the conclusion, that Chambers was authorized by the defendant to obtain the credit upon the faith that the defendant would guarantee the amount to the house from which it should be obtained. If they believed the witness, that fact was sufficiently established; and it appears that, upon the question of his credibility being fully submitted to them, they found their verdict upon the view stated in his testimony. And it is beyond the province of this court, under such circumstances, to say that the jury did wrong in acting upon his testimony as true.

Another circumstance relied on to show that the guaranty was not understood to extend to the indebtedness here sued for, is the letter of the plaintiffs of 26th September, 1855, addressed to Chambers & Standley. That letter states that, when the credit was obtained, Chambers pledged his honor that it should be met with shipments of cotton. And hence it is argued, that the credit was given upon the pledge and responsibility of Chambers & Standley, and not upon the promised guaranty of the defendant. But the letter continues to say, that the credit was obtained upon the pledge that the defendant would guarantee the amount. Both of the pledges are distinctly stated as inducements to the credit; and it does not impair the force of the latter, that the recipients of the credit pledged their honor that they would discharge the debt by shipments of cotton. They were the parties primarily bound to pay it; and it was both the right and the duty of the plaintiffs to require them to do so, before resorting to the collateral obligation arising upon the guaranty.

Upon the whole, it is manifest, that the sufficiency of the evidence to sustain the verdict, depends upon the credit to be given to the testimony of Chambers. It was the province of the jury to decide that question; and it was fully submitted to them by the

instructions, and the verdict was in favor of his credibility.   That question being settled, there can be no doubt but that his testimony fully established the liability of the defendant, and justified the verdict.

Several other errors have been assigned, but they do not appear to be relied upon in argument as grounds of reversal.

Let the judgment be affirmed.