UNITED STATES v. DAISART SPORTS-
WEAR, Inc., et al.

No. 268, Docket 20978.

Circuit Court of Appeals
Second Circuit.

Aug. 23, 1948.

858

L. HAND, Chief Judge, dissenting in part.

Affirmed as to Daisart Sportswear, Inc., and Albert J. Deeb; affirmed in part and reversed in part as to George Smith.

Walter R. Hart, of Brooklyn, N. Y. (Louis Timberg, of Brooklyn, N. Y., on the brief), for defendant-appellant Smith.

. Morris Siegel, of New York City, for defendant-appellant Deeb.

Frederick H. Block, Asst. U. S. Atty., of New York City (John F. X. McGohey, U. S. Atty., and Bruno Schachner, Asst. U. S. Atty., both of New York City, on the brief), for respondent-appellee.

Before L. HAND, SWAN, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

The appellants, Daisart Sportswear, Inc., George Smith, and Albert J. Deeb, were charged with two offenses by two separate informations for misusing priorities established under § 301 of the Second War Powers Act, 50 U.S.C.A.Appendix, § 633; and in addition they were indicted, under 18 U.S.C.A. § 88, for conspiring to violate the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix, § 901 et seq. The first information was of forty-one counts, and it in substance alleged that defendants had unlawfully and wilfully failed to utilize textiles, received as a result of the application of extension ratings, for a prescribed or permitted use. The second information, of a like number of counts, alleged that defendants had unlawfully and wilfully ap-

plied and extended preference ratings for textiles which they were not entitled to apply or extend.[1] Finally, the indictment charged them with conspiring to sell finished piece goods at prices in excess of the maximum established therefor.

The indictment and the two informations were consolidated for trial. All of the defendants were found guilty on the indictment. On the two informations, however, certain counts were eliminated either by action of the court or upon verdict of not guilty, so that Smith and the corporation were found guilty on only thirty-five counts of each, while Deeb was found guilty on but five counts of each. Fines aggregating $710,000 were thereupon imposed on the corporation and Smith, and in addition Smith was sentenced to a total of three years' imprisonment. Deeb was fined a total of $20,000 and sentenced to imprisonment for a year and a day.

Viewing the evidence in its aspect most favorable to support the jury's verdict, Phelps v. United States, 8 Cir., 160 F. 2d 858, 868, rehearing denied Peters v. United States, 8 Cir., 161 F.2d 940, we may treat the following facts as established: Smith was secretary of Daisart Sportswear, Inc., and Deeb was a salesman for it. During the years 1944 and 1945, the defendants applied and extended certain priority ratings of the War Production Board, originally granted to the Metals Disintegrating Company, for the purpose of obtaining certain materials. The defendants certified that the goods were to be used for the manufacture of ammunition powder bags for the Army and, by using top priorities, acquired some two and a half million yards of piece goods. Actually, however, they used only 49,000 yards for the certified purpose, which required a canvas material of a grayish white duck color. The bulk of the goods acquired, including fabrics of all sorts of descriptions and colors, was diverted to civilian handkerchief, dress, negligee, and raincoat manufacturers at prices in excess of the ceilings.

While various issues have been raised on this appeal, there is only one which presents a serious question, namely, whether the defendant Smith gained immunity as a result of testifying before an official of the Office of Price Administration in response to a subpœna issued by that office. His appearance before that agency was on April 30, 1946, or nearly a year before the present charges were made, and was pursuant to two subpœnas served upon him—one in his individual capacity, and the other as an officer of the defendant corporation. By these he was required to produce all purchase records, sales records, invoices, journals, ledgers, cash disbursements books, accounts receivable ledgers, accounts payable ledgers, and all other records and documents of either himself individually or the corporation pertaining to the purchase, sale, manufacture, fabrication, and/or finishing piece goods, materials, and fabrics from January 1, 1945, to the time of the examination. He appeared at the examination with counsel and took the oath as witness. Next the OPA official explained to him that he could not be compelled to make any incriminating statements and that he had certain constitutional guarantees. The questioning then followed.

After a few questions of a preliminary nature and before any matter germane to the present issue had been educed, however, Smith asserted a claim of "privilege as to anything that I say." In response to further questions he explained his failure to produce any of the records required by the subpœnas on the ground that they had been either destroyed or lost or misplaced. During the course of the examination he stated that the defendant corporation was a contractor for the Metals Disintegrating Company, which in turn was under contract to manufacture ammunition bags directly for the United States Government. Since the company was unable to purchase materials, it, so he said, had asked him to do so and provided him with a blanket priority rating for that purpose. Accordingly, as he testi-

---

[1] These terms are explained in United States v. Bradford, 2 Cir., 160 F.2d 729, certiorari denied 331 U.S. 829, 67 S.Ct. 1351. A preference rating is *applied* by the original recipient to obtain commodities from a supplier who then *extends* (uses) the rating to secure the needed commodities from subsuppliers.

860

fied, he maintained a constant stock of material and would manufacture the ammunition bags as orders were received from the Metals Disintegrating Company. He also brought out that his corporation was a contractor for many other concerns as well, naming in all five companies. He further revealed the names of three concerns from which he had purchased fabrics—A. Steinam & Co., L. Lazarus & Co., and Southeastern Cottons. These figured in some fifteen counts of each information, and at the trial, as sellers in making purchases from whom the defendants had illegally extended specific preference ratings. Other disclosures included the name of the bank upon which the corporate checks were drawn in paying for such purchases, the selling of materials and fabrics, and the method of establishing the price for such sales.

All this Smith asserts to be vitally important evidence which went to the very heart of the matters on which his conviction rests and for which he claims immunity under § 202(g) of the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix, § 922(g). This provides that no person shall be excused from complying with any requirements to testify under the act "because of his privilege against self-incrimination," but the immunity provisions of the Compulsory Testimony Act of February 11, 1893, 49 U.S.C.A. § 46, shall apply "with respect to any individual who specifically claims such privilege." The Compulsory Testimony Act provides that no person shall be excused from testifying before the Interstate Commerce Commission on the ground of this privilege and then continues: "But no person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing, concerning which he may testify, or produce evidence, documentary or otherwise, before said commission, or in obedience to its subpœna, or the subpœna of either of them, or in any such case or proceeding," except for perjury committed in so testifying. Smith's position is that, since he was compelled to make the disclosures detailed above, he must be granted the immunity from prosecution provided by statute.

In examining this contention we shall initially consider the charges contained in the two informations. As we have seen, the first alleged that defendants had unlawfully failed to utilize textiles obtained under preference ratings for the purposes certified, while the second alleged that they had unlawfully and wilfully applied and extended preference ratings for textiles. In proof of these charges the prosecution would necessarily show the dealings with the Metals Disintegrating Company, the use of a blanket preference rating to obtain the desired commodities, the companies from which the materials had been purchased, the disposal of the surplus stock, and the companies to which it had been sold. Except for the last, Smith gave information as to all of these matters on his OPA examination. His claim of immunity would therefore be clear except for the circumstance, now to be stated, of his waiving immunity as to a part of his testimony.

He had already testified generally to all the elements stated above—except the names of purchasers of the surplus which he never did disclose—when he volunteered the following, supplementing not too responsively an answer he had just made to a specific question: "Metals Disintegrating Company being a foreign concern and being unable to furnish this material, they asked me to purchase materials for them. They were aware that I cannot do that without proper priorities. Those priorities were forthcoming in a blanket sum. No stipulated amount and I was further told to maintain a constant stock for any orders they may call. I mean Daisart Sportswear Inc., for any orders they may call for. Their orders came to me sometimes dated and never in any set size or specified form. They charged from day to day. I then went about purchasing material for their work. When and if I had a surplus, I would notify them and ask them if they had anything immediately on hand as I am overstocked, at which time they told me they had not and to dispose of it." Then the examiner said: "This is a voluntary statement. You do not claim inmmunity with respect to that statement?" to which the answer was, "No." There followed cer-

tain explanatory answers, set forth in the margin,[2] which reiterated the use by Daisart of the blanket preference ratings to obtain material and the disposal of the material by sale.

■ While this account thus to a certain extent overlapped testimony previously given, it was at once a clearer, more connected, and more succinct statement of Smith's and the Daisart method of operation than had previously been disclosed. It is well settled that the immunity extends only to *compelled* testimony and, indeed, we have applied the doctrine of waiver of immunity under circumstances where the intent of the witness was less clear than here. United States v. DeLorenzo, 2 Cir., 151 F.2d 122. Even where this testimony repeated previous answers which would have been subject to the witness' initial general claim of immunity, we see no reason why a witness cannot qualify and limit his claim as the examination proceeds, just as he can make new claims as to issues he has not waived. The Government indeed contends that the waiver should be held to cover all the testimony extracted so as not to bar this prosecution in any way. We think, however, that this would go beyond the intent of the witness and clearly beyond what the examiner understood and acted upon at the time. A more reasonable approach is to apply the waiver to the extent and in accordance with the intent of the witness, as the examiner accepted it at the time.

■■ So viewed, we must note that here he does not repeat or indeed specifically mention the companies from which Daisart had purchased material. He does refer to certain matters upon which were based some of the counts of the informations upon which conviction was had. Thus his volunteered statement disclosed the dealings with the Metals Disintegrating Company and the use of a blanket preference rating, as well as the disposal of surplus stock. His conviction on counts dealing only with this much of the disclosed information must therefore stand. But since he has not waived immunity in respect to his earlier disclosure that A. Steinam & Co., L. Lazarus & Co., and Southeastern Cottons were sellers to the corporation, he cannot be prosecuted on the counts based on transactions with those companies. Specifically, then, his conviction on the following counts on each information must be reversed, namely, Counts 1–4, 7, 11, 14, 16, 17, 20, 24, 30.

■■ The Government maintains that, since the questions asked went to what the corporation did, rather than to what Smith had done, he relinquished no privilege in testifying, and hence was not entitled to immunity. It is clear, however, that his answers, at least in part, incriminated him, and to that extent he must be granted immunity. It is true a corporate officer may be compelled to produce corporate records even though they tend to incriminate him, Wilson v. United States, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771, Ann.Cas.1912D 558, and may even be compelled to testify as to the genuineness of corporate documents, United States v. Austin–Bagley Corporation, 2 Cir., 31 F.2d 229, certiorari denied Austin–Bagley Corporation v. United States, 279 U.S. 863, 49 S.Ct. 479, 73 L. Ed. 1002. Yet we do not believe that the principle of the Austin–Bagley case, supra, may be projected so that a corporate officer may be compelled to testify as to any and all phases of the corporation's activi-

---

2 "Question: I assume that anything you tell us, Mr. Smith, is subject to verification? You state that after a time Metals Disintegrating Company, although it had a contract with the government, was not in a position to furnish you with the materials necessary for Daisart to manufacture this item? Answer: Right.

"Question: And that because of that situation, Daisart was required to obtain priorities so that Daisart could obtain the materials and that it did so? Answer: In a blanket amount.

"Question: And that pursuant to that priority, Daisart thereafter acquired materials, some of which were used in the manufacture of ammunition bags for Metals, and some of it was disposed of by Daisart, is that correct? Answer: Yes.

"Question: And those disposals by Daisart formed a good part of the sales of fabrics made by Daisart? Answer: They did."

ties, without at the same time obtaining a grant of immunity for the incriminating matter he is compelled to disclose.

■ The further point is made that Smith, in effect, but summed up what the books of the corporation contained. Coupled with this is the contention that an individual may be compelled to give oral testimony that is explanatory of his records. Fleming v. Silverman, D.C.Ill., 7 F.R.D. 29. We recognize that if Daisart had been required to submit reports pursuant to OPA's record-keeping requirements, then Smith could not claim immunity if compelled to produce them. Shapiro v. United States, 68 S.Ct. 1375. We think, though, the production of records must be distinguished from oral testimony as to what the records would contain, had they been produced. Some language in Fleming v. Silverman, supra, as well as Porter v. Heend, D.C.Ill., 6 F.R.D. 588, may tend to support the Government's position; yet, in the former case, it was expressly found that the defendant had not disclosed incriminating facts, and the latter involved the process of discovery in the serving of interrogatories upon the defendant. The court's reasoning in the latter case is that, since the Government could have compelled the submission of the records, it could require the defendant to answer interrogatories detailing information contained in the records. Both were civil cases, not dealing with the imposition of criminal penalties. Here the matter disclosed was incriminating, and there was no question of forcing the production of the records, since they were either lost or destroyed. In consequence the very matter that would incriminate had to be forced from the lips of the defendant himself, rather than obtained from the records or books.

■ On the principles we have stated, we think that Smith did not obtain immunity as to the crime charged in the indictment. The indictment charged the defendants with conspiracy to sell textiles at prices in excess of the established maximum prices and that as a part of the conspiracy they had sold finished piece goods in excess of such maximum prices. This was the essential gravamen of the indictment; other parts referred only to accessory details such as the issue of false invoices and invoices from fictitious sellers, the lack of proper invoices, the accepting of checks drawn to fictitious sellers, the failure to keep records required by the OPA. As we have seen, Smith in the statement he volunteered to the OPA examiner declared that he was told to dispose of the surplus material he had on hand, and further that such disposals formed a good part of the sale of fabrics made by Daisart. This supplemented earlier statements that Daisart had not bought textiles for the sole purpose of reselling, but had sold only surplusages, and that "since it was surplus, it was sold at the price billed to me plus freight and haulage and less discount allowed to me." [3] It will be seen that the matter just quoted is the only matter not explicitly included in the volunteered statement; immunity, if any, must attach solely by reason of it. There is no contention that this was an overceiling price; in fact there was testimony for the prosecution to the contrary, and the prosecutor in summation and the Government's brief here rely on this as a statement of a sale within the ceiling prices.

How far immunity can be claimed to flow from a statement, however false in fact, showing or maintaining that one is observing the law may present an interesting question. Thus Wigmore suggests that "the privilege, by hypothesis, would have been violated only if the witness had truly confessed his crime, but if he denies it and falsely exonerates himself, he has confessed no fact 'against himself.'" 8 Wigmore on Evidence, 3d Ed. 1940, 504. Here, however, our question is somewhat different, namely, how far a witness partially waiving his immunity can reasonably be considered to have gone in so doing. The whole tenor of his volunteered statement is that he was making perfectly valid sales, just as he had previously explained; the fact that he does not here repeat the OPA formula

---

[3] Reiterated in the next question and answer, viz., "Question: In other words, Daisart Sportswear Inc., sold at cost plus freight less any discounts, cash or otherwise, received by Daisart Sportswear Inc.? Answer: Correct."

(which was of course no news or no new lead to the examiner) should not now procure him an immunity which, as it seems clear to us, he did not intend at the time to claim.

It should be noted that here, as in United States v. DeLorenzo, supra, the actual testimony was not used to bring about the conviction itself. The court here limited the use of the transcript entirely to the case against the corporation whose officer Smith was and excluded it not only as to Smith, but also as to Deeb. It is true, as both individuals complain, that the prosecutor did refer to it in his summation as against them, and stated that the answer quoted above showed Smith's knowledge of the actual ceiling prices. But this was a slip to which no objection was made at the time. The court specifically and carefully charged that this testimony was not to be considered in any way in determining the guilt or innocence of Smith and Deeb.

The other errors as assigned may be disposed of briefly. We think the consolidation of the two informations and indictment for purposes of trial was proper. The consolidation complies with Rule 8(a), Federal Rules of Criminal Procedure, 18 U. S.C.A. following section 687; the offenses were certainly based on "transactions connected together." There was an identity of defendants under all the charges, and the unlawful extension of preference ratings and the selling of the goods so obtained at overceiling prices were all part of a single scheme. DeLuca v. United States, 2 Cir., 299 F. 741, and Castellini v. United States, 6 Cir., 64 F.2d 636, the only cases cited by the defendants, will not assist them; the former was overruled, the latter (which is hardly in point here) was disapproved, in United States v. Kelley, 2 Cir., 105 F.2d 912. See also United States v. Antonelli Fireworks Co., 2 Cir., 155 F.2d 631, certiorari denied 329 U.S. 742, 67 S.Ct. 49; United States v. Gottfried, 2 Cir., 165 F.2d 360, certiorari denied Gottfried v. United States, 333 U.S. 860, 68 S.Ct. 738.

Deeb objects that the evidence was insufficient to connect him with the crimes for which he was convicted. But the evidence appears ample. True, Smith was the master figure in these illegal transactions, totaling thousands of dollars, as the court stated in meting out sentences to the accused. But Deeb had too close connection, by way of making actual sales, taking the proceeds, giving instructions on the Daisart letterhead as to materials, appearing as Smith's salesman, vouching for the fictitiously named persons through whom Smith operated, and so on, to allow him to appear not as a real principal, but only as a mere broker.

Finally, there was objection to certain charts prepared by an F.B.I. agent based on the evidence in the case, and the agent's testimony in respect thereto. The defendants contend that it is improper for a witness to summarize the evidence in such a fashion. But United States v. Johnson, 319 U.S. 503, 519, 63 S.Ct. 1233, 87 L. Ed. 1546, is authority for the propriety of such testimony.

Hence we affirm all convictions of Deeb and Daisart Sportswear, Inc., reverse the conviction of Smith upon Counts 1–4, 7, 11, 14, 16, 17, 20, 24, and 30 of each information, and affirm as to the balance as found by the jury. This will reduce the total amount of the fines levied upon Smith, but will not affect his prison sentence.

L. HAND, Circuit Judge (dissenting in part).

I agree with my brothers except as to the conviction of Smith upon the indictment, which I think ought also to be reversed. The language of the act[1] is that no one shall be prosecuted "on account of any transaction * * * concerning which he may testify * * * in obedience to * * * subpœna." There can be no debate that Smith was questioned and testified "concerning" the prices at which the company sold; and, as the indictment was for conspiring to sell at higher prices than the regulations allowed, his testimony inevitably "concerned" the "transactions" charged in the indictment. On the other hand, not only did his answers not support

---

[1] § 46, Title 49, U.S.C.

864

the charge, but they at least tended to refute it: I shall assume that they did refute it. Laying aside the "waiver" for the moment, we should have to hold, in order to affirm the conviction, that, when it has been ascertained that a witness's answers to questions "concerning" a "transaction," which may or may not be criminal, will not incriminate him—a fortiori when they exculpate him—he must answer. It is true that this is in accord with the following passage in Wigmore,[2] although he was only giving the reasons why such statutes do not give immunity to a witness who answers falsely: "The privilege, by hypothesis would have been violated only if the witness had truly confessed his crime, but if he denies it and falsely exonerates himself, he has confessed no fact 'against himself'" and "his privilege has not been infringed by the actual answer." Apparently there are no decisions supporting this statement, and I cannot agree with it. The privilege, if it is to exist at all, must include all questions which are relevant to the witness's guilt, regardless of how he will answer them. Were it otherwise, the privilege itself would be conditional upon the answers, and the witness, in order to assert it, would be obliged to disclose whether he would deny or admit any guilt. It is precisely to protect him from that predicament that the privilege exists; indeed, the result would be to compel him, if he was in

fact guilty, either to confess his guilt, or to add perjury to it.

I do not understand that we are committing ourselves to this position; on the contrary we are expressly refusing to do so; but this we do only because we hold that the "volunteered statement" included the "transactions" defined as crimes in the indictment. In doing so are we not giving to the only relevant passage in the "statement" a wider scope than is justified? All that it contained, touching the charge in the indictment, is the following passage: "When and if I had a surplus, I would notify them and ask them if they had anything immediately on hand as I am overstocked, at which time they told me they had not and to dispose of it." That did indeed allow the use of any of Smith's earlier or later testimony to the same effect, but as a "waiver" it went no further. The "statement" said nothing "concerning" the prices at which the "surplus" was sold, and Smith had already been questioned about those and had answered. I quote his testimony in the margin.[3] It seems to me that he did not "waive" his immunity by "volunteering" that all he sold was "surplus"; for a "waiver" must extend to all the essentials of the charge from whose prosecution the act gives him immunity. The sales price was the very kernal of that charge.

---

[2] Wigmore on Evidence, § 2282(c).

[3] "Question: But you do state the fact to be that sales of materials and fabrics were made by Daisart Sportswear Inc.? Answer: Correct.

"Question: Can you tell me how Daisart Sportswear Inc., arrived at its selling price with respect to the items that it sold? Answer: Since it was surplus, it was sold at the price billed to me plus freight and haulage and less discount allowed to me.

"Question: In other words, Daisart Sportswear Inc., sold at cost plus freight less any discounts, cash or otherwise, received by Daisart Sportswear Inc.? Answer: Correct.

"Question: For the year 1945, what

was the dollar volume of sales of fabrics and materials made by Daisart Sportswear Inc.? Answer: I have no knowledge of that. Without records I cannot tell.

"Question: Are there such records available? Answer: There are not to my knowledge.

"Question: Can you tell the names of the persons or companies who purchased fabrics or piece goods or materials from Daisart Sportswear Inc.? Answer: Off hand I don't know. Not without consulting records.

"Question: You don't remember the names? Answer: Not off hand. I could name some, but I would rather not answer."