**E. E. MORGAN, Petitioner-Appellant,**

v.

**Fred THOMAS, Sheriff of Hinds County, Miss., etc., Respondent-Appellee,**

**United States Fidelity & Guaranty Company, Intervenor.**

**No. 71–1152.**

United States Court of Appeals, Fifth Circuit.

Sept. 17, 1971.

Rehearing and Rehearing En Banc Denied Nov. 15, 1971.

Vardaman S. Dunn, Thomas H. Watkins, Jackson, Miss., for petitioner-appellant; Cox & Dunn, Ltd., Watkins & Eager, Jackson, Miss., of counsel.

A. F. Summer, Atty. Gen. of Miss., William A. Allain, Asst. Atty. Gen., Jackson, Miss., for respondents; Joe A. Covington, Meridian, Miss., George H. Butler, Robert C. Cannada, Junior O'Mara, Phineas Stevens, Jackson, Miss., for intervenor; Snow, Covington, Temple & Watts, Meridian, Miss., Butler, Snow, O'Mara, Stevens & Cannada, Jackson, Miss., of counsel.

Junior O'Mara, Phineas Stevens, Jackson, Miss., for respondent.

Before JOHN R. BROWN, Chief Judge, and GEWIN and MORGAN, Circuit Judges.

MORGAN, Circuit Judge:

This is an appeal from a judgment, 321 F.Supp. 565, denying a petition for a writ of habeas corpus by which the appellant Morgan seeks to challenge collaterally a decree adjudging him to be in civil contempt for failing to comply with a decree of the Chancery Court of Hinds County, Mississippi, and directing that he be fined and imprisoned until he purge himself of contempt. The decree with which he refuses to comply resulted out of a proceeding in the nature of a judgment creditor's bill and directed Morgan, among other things, to file with the court and United States Fidelity & Guaranty Company (hereafter, U.S.F.&G.), an intervenor herein, a financial statement in regular form giving his financial position on two dates specified in the decree and a statement under oath setting forth the identity, status, and location of assets of every kind, including the names of persons having possession, custody or control of the assets. Morgan contends that in order to provide this information he will be required to incriminate himself in violation of the Fifth and Fourteenth Amendments to the United States Constitution under §§ 2250 and 2252 of the Mississippi Code of 1942, Recompiled, which prohibit as larceny the removal or concealment of assets subject to a judgment lien and, further, that such information might subject him to punishment for criminal contempt for having failed to convey all his assets to a receiver as directed by the chancellor's decree. We reverse and remand with directions more fully set out below.

In 1958, Morgan entered an arrangement with R. W. Hyde, Jr., doing business as the Hyde Construction Company, for the purpose of lending his considerable assets to Hyde's growing construction business to enable Hyde to secure payment and performance bonds secure payment and performance bonds from various surety companies. Under this arrangement, Morgan would execute an indemnity agreement with the surety company supplying the necessary bonds for a construction project and then, in return, would receive a commission from Hyde, which under the terms of their agreement was two and one-half percent of the contract price of the project. As a result it became possible for Hyde to obtain large construction contracts that would have otherwise been beyond his financial reach.

In that same year, U.S.F.&G. began writing bonds for Morgan and Hyde, and Morgan furnished it his financial statements for the years 1956, 1957, and 1958, each of which showed that he had

a personal net worth in excess of three million dollars.

In January, 1960, the R. V. Tyler Company, Inc., and Hyde Construction Company executed an application for a performance and payment bond and an indemnity agreement with U.S.F.&G. in connection with a contract entered into between Hyde Construction Company and the City of Shively, Kentucky, for the construction of a large sewer system. Morgan obligated himself under the bond application and indemnity agreement by letter in which he stated:

> That the signing and furnishing of this letter obligates me to the terms and conditions of the enclosed 'Application for Performance and Payment Bonds and Indemnity Agreement' on Form No. 1 just as though I were named as one of the applicants therein and my signature were duly affixed thereto.

Under the terms of the application, the applicants, including Morgan, agreed that:

> * * * applicants and any of them will furnish to sureties upon request and at such reasonable intervals of time as sureties may designate, financial statements showing the current financial position of the applicant of whom such request or statement is made.[1]

As time progressed, Hyde became financially unable to meet his obligations and U.S.F.&G. became liable to third parties on several bonds covering his contracts, including the bond covering the Shively sewer project. After discharging these liabilities U.S.F.&G. filed an action in Mississippi chancery court to recover indemnity from Morgan, Hyde and their affiliates. In its decree the chancery court held that Morgan and the other defendants were obligated "to perform specifically each and every obligation assumed by them under the terms of each of the various bond applications and indemnity agreements signed by them" and awarded U.S.F.&G. a money judgment for approximately $3,000,000. In doing so, the chancellor found that U.S.F.&G. acted in reliance on the combined net worth and assets of Morgan and Hyde and was thereby induced to write surety bonds on numerous construction projects involving many millions of dollars, and that, in each of the twelve bonds on which indemnity was being sought, Morgan voluntarily and specifically bound himself to protect, reimburse, indemnify and exonerate U.S.F.&G. in funds with which to pay creditors of the projects. The decree was affirmed on appeal, Morgan v. United States Fidelity & Guaranty Co., 191 So. 2d 917 (Miss.1966), and was enrolled and became a judgment lien upon all the assets and properties of the judgment debtors.

On September 3, 1965, U.S.F.&G. made a formal demand and request that Morgan furnish it with a financial statement showing his current financial position. Morgan refused the request and, in November, 1965, was adjudged in civil contempt for his refusal to furnish the requested financial statement by the chancery court. However, on appeal the Mississippi Supreme Court held

---

1. The paragraph of the Shively bond application here in question provides that:
Tenth: A representative of the sureties shall have access at all reasonable times and places to the books and records of the said applicants and to correspondence with the representatives of said Obligee and shall be entitled to receive full information from the applicants and the banks of deposit of said applicants and shall be given such information as such representatives shall request, all as the same relate to the construction work to be performed by the applicants in connection with the contracts hereinabove mentioned * * * In addition to the above information to be furnished from, and the right given to the Sureties to examine, the books, records, correspondence and bank accounts of applicants as the same relate to said above mentioned contract, applicants and any of them will furnish to Sureties, upon request and at such reasonable intervals of time as Sureties may designate, financial statements showing the current financial position of the applicant of whom such request for a statement is made.

that the 1965 decree was not sufficiently specific to support the civil contempt decree. Morgan v. United States Fidelity & Guaranty Co., 191 So.2d 851 (1966).

Thus in 1967, after failing to obtain a financial statement and after failing to collect its judgment by means of writ of execution and garnishment, U.S.F.&G. filed an action in the nature of a judgment creditor's bill in chancery court seeking to enforce the 1965 decree; to enforce specific performance of Morgan's agreement to furnish current financial statements; to obtain discovery of Morgan's assets; and to obtain other equitable relief, including the appointment of a receiver. In its bill, U.S.F. &G. averred that:

> * * * Said judgment has been duly enrolled and constitutes a lien on the property of defendant. * * * Complainant avers upon information and belief that defendant has concealed his assets and resorted to other devices for the purpose of hindering, delaying and defrauding complainant of its rights as a judgment creditor, and complainant has no plain, adequate, speedy and complete remedy at law.

Morgan refused to respond to this averment on the ground that to do so might tend to incriminate him under §§ 2250 and 2252 of the Code of Mississippi of 1942, Recompiled.[2]

While the chancellor refused to require Morgan to answer the averment made by U.S.F.&G. that he had fraudulently concealed assets on the ground that to do so would violate his privilege against self-incrimination under the Fifth Amendment, he held, after a trial on the merits, that a course of conduct was shown indicating concealment of assets by Morgan when regard was had to Morgan's failure to testify; that the complainant U.S.F.&G. was entitled to a full discovery of the identity, status and location of assets of every kind, including the names of persons having possession, custody or control of assets; that a receiver should be appointed for the collection of Morgan's assets;[3] and that Morgan should be enjoined from disposing of any assets which might be owned by him. Pursuant to these holdings, the chancellor decreed that:

> 6. The complainant is entitled to specific performance of the application and indemnity agreement relating to the Shively, Kentucky project * * * and it is ordered, adjudged and decreed that the defendant, E. E.

---

2. § 2250. *Larceny—removing property subject to lien out of state.*

If any person shall move, or cause to be removed, to any place beyond the jurisdiction of this state, any personal property which shall at the time of such removal be under written pledge, or mortgage, or deed of trust, or conditional sales contract, or lien by judgment, or any other lien in this state, with intent to defraud the pledgee, mortgagee, trustee, cestui que trust, conditional vendor, or creditor, he shall be guilty of a misdemeanor, and, upon conviction, shall be fined not more than one thousand dollars ($1,000.00) or imprisoned in the county jail not more than twelve (12) months, or both.

§ 2252. *Larceny—removing property subject to lien out of the county—selling.*

Any person who shall remove, or cause to be removed, or aid or assist in removing from the county in which it may be, any personal property which may be the subject of a pledge, mortgage, deed of trust, conditional sales contract, lien of a lessor of lands, or lien by judgment, or any other lien of which such party has notice, without the consent of the holder of such encumbrance or lien, or who shall conceal or secrete such property, or who shall sell or dispose of the same or any part thereof without the consent of the mortgagee or beneficiary, or conditional vendor, whether *any of these acts shall be done before* or after the maturity of the debt secured by the lien, and shall not immediately discharge such encumbrance or lien or pay to the holder of such lien or encumbrance the value of such property in event same is less than the amount of such lien or encumbrance, shall, upon conviction, be imprisoned in the county jail not more than one year, or be fined not exceeding the value of such property, or both.

3. Pursuant to this decree, Morgan conveyed certain of his assets to the receiver on August 21, 1967, by quitclaim deed.

Morgan, is ordered, directed and commanded to furnish the complainant, within fifteen (15) days from the date of this decree, and to file with the Clerk of this Court in this cause, a financial statement showing the current financial position of defendant as of the date of September 3, 1965, and as of the date of the decree. Said financial statement shall be in the form and shall show in detail the information called for by the form attached hereto * * *.

7. That the defendant, E. E. Morgan, be and he is hereby ordered, directed and commanded to file with the complainant and with the Clerk of this Court, within fifteen (15) days from the date of this decree, a statement in writing setting forth the identity, status and location of all his assets and property of every kind, nature and description, and setting forth the name or names of any persons, firms or corporations who may have custody or control of any of said assets or property, such statement to include, but not to be limited to, all goods, chattels, money, accounts, notes, bonds, mortgages, deeds of trust, contracts securities, evidences of debt and choses in action, belonging to defendant or wherein he has any interest.

In his exception to the final decree, Morgan specifically excepted to Paragraphs 6 and 7 on the ground that they required him to incriminate himself in violation of the Fifth and Fourteenth Amendments. The chancellor denied Morgan's exceptions on August 9, 1967, and he appealed to the Supreme Court of Mississippi.

In affirming the chancellor's decree in Morgan v. United States Fidelity & Guaranty Co., 222 So.2d 820 (Miss.1969), cert. den. 396 U.S. 842, 90 S.Ct. 106, 24 L.Ed.2d 93, the Mississippi Supreme Court held that Morgan had waived his privilege against self-incrimination either by contract or estoppel, relying particularly on Wigmore on Evidence, §

2275 (McNaughton Rev. 1961) to the effect that:

* * * (1) A bare contract to waive the privilege will not be enforced *specifically*. Rather, it will be enforced, where possible, by indirect sanctions similar to those (short of arrest and contempt) available to punish civil litigants who refuse to comply with orders to make discovery—e. g. dismissal of the action. Or the sanction may be loss of employment or of pension or of the right to do business with the government.

(2) Where there are not only the ingredients of an express or implied contract to waive but also a *fiduciary relation* or other elements of public policy making recognition of privilege unconscionable, the waiver of privilege may be specifically enforced and the witness held in contempt for failure to make disclosure. * * * (Footnotes omitted.)

The court also relied on the cases of Shepard v. Barron, 194 U.S. 553, 24 S. Ct. 737, 48 L.Ed. 1115 (1904) and Zap v. United States, 328 U.S. 624, 66 S.Ct. 1277, 90 L.Ed. 1477 (1946). After finding a different application for the privilege in civil, rather than criminal, proceedings, the court held that the bonds gave rise to the equivalent of a fiduciary relationship, that of a principal and surety and that since Morgan stood in relation to U.S.F.&G. as a principal obligated to protect his surety, U.S.F. &G. was entitled to have specific performance on the undertaking in the application for the Shively bond whereby Morgan promised to supply U.S.F.&G. his financial statement upon reasonable demand. The court found public policy support for this conclusion in the need for the orderly enforcement of judicial process. On this basis, the court found it unnecessary to discuss whether or not the technical requirements of waiver or estoppel were complied with, although it quoted at length from Shepard v. Barron, supra.

The challenged portions of the decree were stayed until the petition for certio-

rari was denied by the U. S. Supreme Court. Morgan still refused to provide the specific information and on March 9, 1970, the chancery court entered a decree adjudging him to be in civil contempt and ordered that he be taken into custody and confined until he purged himself of contempt. The decree also imposed a civil fine of $50 for each day Morgan refused to comply.

Morgan was arrested by the sheriff of Hinds County, Mississippi, on March 9, 1970, but was freed immediately thereafter on order of the district court pending a determination on the merits of a petition for a writ of habeas corpus filed with the federal district court. After a full hearing, the district court denied the petition holding that in view of the fact that Morgan had voluntarily agreed to provide U.S.F.&G. with financial statements upon reasonable demand and other financial information in the application for the bond on the Shively sewer project and that U.S.F.&G. was induced to write the bond on the Shively project in reliance on the promises made in that application

> * * * this Court is of the opinion and finds that petitioner's constitutional privilege against self-incrimination afforded by the Fifth and Fourteenth Amendments was relinquished by his conduct which constituted a specific, deliberate and voluntary waiver and that he is, under the facts and circumstances hereof, estopped from claiming this privilege.

The district court further stated:

> In any event, if the Court is mistaken in this regard, it is perfectly clear that the financial statement must be furnished, and that petitioner's refusal to furnish it herein justifies his adjudication of civil contempt.

Subsequently, on March 1, 1971, the Mississippi Supreme Court affirmed the civil contempt decree in all respects. Morgan v. United States Fidelity & Guaranty Co., 245 So.2d 587 (Miss. 1971).

We are thus presented in this appeal with two narrow issues: *first*, whether the privilege against self-incrimination can be relinquished by contract prior to the development of circumstances which would make its exercise appropriate; and, *secondly*, whether the privilege can be lost under the traditional doctrine of equitable estoppel under the facts presented here.[4] As will be developed in more detail below, we do not feel that Morgan relinquished his privilege either by express contract or by conduct giving rise to an estoppel in pais and was therefore entitled to assert it before the Mississippi chancery court.

## I. *Relinquishment by Contract.*

As was noted above, the Mississippi Supreme Court was strongly impressed with Section 2275 of Wigmore on Evidence, supra, in holding that because Morgan had expressly contracted to provide certain financial information to U.S.F.&G. in the Shively bond application, stood in the fiduciary relation of principal to his surety, U.S.F.&G., and because of the public interest in effectuating judicial process against judgment debtors, U.S.F.&G. was entitled to have the agreement to provide a financial statement specifically enforced, notwithstanding the assertion of the privilege by Morgan.

This statement in Wigmore, in turn, relied exclusively for federal authority upon the case of United States v. Field, 2 Cir., 1951, 193 F.2d 92, cert. dism. 342 U.S. 908, 72 S.Ct. 303, 96 L.Ed. 679. In that case, the trustee of a bond fund for the defendants in the famous communist conspiracy cases of the late 1940's and early 1950's refused to divulge the

---

4. It is conceded by all parties that the privilege can be asserted in a civil proceedings of the nature involved herein and that, absent any relinquishment by Morgan, he is entitled to assert it in refusing to file the statements required by the chancery court's decree. See generally, Hoffman v. United States, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118 (1951), and McCarthy v. Arndstein, 266 U.S. 34, 45 S.Ct. 16, 69 L.Ed. 158 (1924).

sources of the fund's money, produce the books and records of the fund and to testify as to the whereabouts of four of the defendants who had jumped bail and fled. The trustee was held in civil contempt for these refusals and the court of appeals, in the course of its opinion upholding the contempt conviction, over a strong dissent by Judge Frank, held that when a person undertakes a direct obligation as a public officer or fiduciary to provide certain information—such as a bail bond surety's obligation to act as jailor for his principal and answer for their presence to the court—he cannot avoid his obligation by asserting the privilege.[5]

Two later cases, however, made it clear that *Field* no longer states the law. In Curcio v. United States, 354 U.S. 118, 77 S.Ct. 1145, 1 L.Ed.2d 1225 (1957), the secretary-treasurer of a local union asserted his privilege against self-incrimination in refusing to answer questions concerning the whereabouts of the local's books and records. The Court held that "[a] custodian, by assuming the duties of his office, undertakes the obligation to produce the books of which he is custodian in response to a rightful exercise of the State's visatorial powers. But he cannot lawfully be compelled, in the absence of a grant of adequate immunity from prosecution, to condemn himself by his own oral testimony". Id. at 123–124, 77 S.Ct. at 1149. In doing so, the Court went on to say:

> The Government cites but one federal case, United States v. Field (CA2d NY) 193 F.2d 92, as directly

supporting its position. [Footnote omitted.] In that case, the trustees of a bail fund were held in contempt for failure to produce records of the fund pursuant to a subpoena. After affirming the convictions on that ground, the Court of Appeals for the Second Circuit went on to consider, by way of dictum, other contentions raised by the trustees. One of their contentions was that questions about the location and production of records were improper. The court, relying on several cases in which a custodian was compelled to identify records which he had already produced, said that the questions pertaining to the location of the records "were proper under the precedents". Id. 193 F.2d at [page] 97. The cases cited, however, do not support the court's dictum.[6] Id. at 126–

6. Moreover, prior and subsequent decisions of the same court, in which two of the same judges participated, contradict the statement contained in the Field case. In United States v. Daisart Sportswear, Inc. (CA 2d NY) 169 F.2d 856, 861, 862, the court stated that "we do not believe that the principle of the Austin-Bagley case, supra [Austin-Bagley Corp. v. United States, 279 U.S. 863, 49 S.Ct. 479, 73 L.Ed. 1002, may be projected so that a corporate officer may be compelled to testify as to any and all phases of the corporation's activities, without at the same time obtaining a grant of immunity for the incriminating matter he is compelled to disclose". And further, that "the production of records must be distinguished from oral testimony as to what the records would contain, had they been produced". Id. 169 F.2d at 862. Subsequently, in United States v.

5. In dissenting, Judge Frank said:
My colleagues' position as to those questions is this: The defendants bargained away the privilege many months before any judicial inquiry arose, when they voluntarily became sureties and thereby impliedly promised to disclose to the government any information which might aid in bringing into custody the convicted persons for whom the defendants had gone bail. I have no doubt that the defendants did assume that obligation. Doubtless, too, the effective assertion of the privilege would be flatly inconsistent with that obliga-

tion and would be a breach of it. But I do not accept my colleagues' thesis that a court may criminally punish a man who breaks such a contract by which he agrees, long in advance, to surrender his anti-self-incrimination privilege. In short, I think that no such advance (pre-inquiry) contract can validly destroy the privilege (not to give oral self-incriminating testimony) when asserted by a witness in response to questions during a proceeding, if that privilege would otherwise apply.
At 193 F.2d 103, 104.

Patterson (CA 2d NY) 219 F.2d 659, 662, the court, in reversing a contempt conviction for refusal to produce records, approved the trial court's ruling that questions relating to the whereabouts of the records were privileged. "The defendant can here legally be jailed only for a contempt in failing to produce the sought-after books when they are fairly shown to be presently within his power and control. He cannot legally be jailed for contempt for invoking his constitutionally protected privilege not to be a witness against himself."

See also, Lopiparo v. United States (CA 8th Mo) 216 F.2d 87, where the trial court upheld the custodian's claim of privilege with respect to oral testimony pertaining to corporate records.

127, 77 S.Ct. at 1150.

More recently, the Supreme Court has held in Gardner v. Broderick, 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968), that a police officer could not be dismissed from his employment for the sole reason of asserting his privilege against self-incrimination and refusing to waive his statutory immunity from prosecution in a grand jury investigation, even though he was required to do so by statute and the terms of his employment contract. In view of this holding, it is difficult to understand how a person can be punished by the sanction of contempt for asserting the privilege in contravention to a prior contractual undertaking in no way contemplating circumstances which might make the assertion of the privilege appropriate.

Moreover, such a position would lead to a situation which would make the privilege unavailable in commercial transactions at the whim of one of the contracting parties. As was said by Judge Frank in his dissent in the *Field* case:

Since then, my colleagues' decision cannot reasonably rest on the notion of a special class, it must be taken as overruling the precedents, *i. e.*, as holding that any advance contractual promise inconsistent with the exercise of the privilege extinguishes the privilege. If my colleagues' remarks about the need for a "close and direct" relation between promise and privilege leave any lingering doubts on this score, those doubts can be easily dispelled in this way: insert in a contract an express provision that one of the parties promises to divulge, to the other, information of a designated kind, and that the promissor surrenders his privilege with reference to oral testimony in so far as it would interfere with performance of that promise. Then, presto chango, up the chimney goes the privilege. Thus, if my colleagues' decision is generally accepted, the sole practical effect of the constitutional privilege will be to add a few words to a contract. So the high hopes of Madison and his fellows, expressed in this Fifth Amendment privilege, will end up in a rubber-stamp contractual clause. Especially will all government employes be stripped of the privilege—by contract. Before long rubber-stamped out of existence, the privilege will be but a quaint item of antiquarian lore.

*United States* v. *Field*, supra, 193 F.2d at 107.

The courts below and appellee here also rely on the case of Zap v. United States, supra, to support the proposition that the privilege against self-incrimination can be waived by prior contract. However, we find the case inapposite to the present situation. There a defense contractor under a cost-plus contract with the Navy had agreed in his contract to allow the government to inspect his accounts and records. In the course of an audit of the contractor's books by the government a cancelled check was discovered and seized which indicated he had fraudulently misrepresented his costs to the government. In upholding the admission of the check into evidence in a subsequent criminal trial, the Court held that the contractor "voluntarily waived such claim to privacy which he otherwise might have had as respects business documents related to those contracts". Id., 328 U.S. at 629, 66 S.Ct. at 1279, 90 L.Ed. 1477. While, as the Court noted, there is a close interplay

between the Fourth and Fifth Amendments, it must be obvious that there is also a qualitative difference between waiving the right to privacy as guaranteed by the Fourth Amendment and granting another the right to enter a specific geographic area and inspect and seize items of personal property found there and waiving the right to privacy granted by the Fifth Amendment and allowing the government to force a person to either provide evidence against himself out of his own mind and with his own tongue or face criminal sanctions.[6]

Finally, in order for a waiver to be effective, there must be "an intentional relinquishment or abandonment of a known right or privilege". Brookhart v. Janis, 384 U.S. 1, 4, 86 S.Ct. 1245, 1247, 16 L.Ed.2d 314 (1966), and Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). In the situation before us, it is doubtful that Morgan knew or ever contemplated, that as he signed the letter assenting to the terms of the bond application in 1960, which in no way made explicit any waiver of the privilege, that some five years later he would be in a position to assert the privilege in contravention of the terms of the application. It is difficult for us to find "an intentional relinquishment or abandonment of a known right or privilege" in an event so remote from the advent of the circumstances making the assertion of the privilege possible. Cf. Barber v. Page, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968).

II. *Waiver by Estoppel.*

In holding that Morgan was equitably estopped from asserting his privilege against self-incrimination to avoid divulging the identity, status and location of his assets in the state proceedings,

the district court relied heavily on the cases of Shepard v. Barron, supra, and Ralston v. Cox, 5 Cir., 1941, 123 F.2d 196, cert. den. 315 U.S. 796, 62 S.Ct. 488, 86 L.Ed. 1197.

In Shepard v. Barron, the Court held that where a landowner initiates a procedure under a state statute to issue bonds to finance the construction of a road adjacent to his property to be paid for by a frontage assessment on the adjacent land, served on the committee of landowners overseeing the project and paid his assessment for several years after the improvements have been completed, he is estopped to challenge the statute on due process ground, saying:

Provisions of a constitutional nature, intended for the protection of the property owner, may be waived by him, not only by an instrument in writing, upon a good consideration, signed by him, but also by a course of conduct which shows an intention to waive such provision, and where it would be unjust to others to permit it to be set up. Certainly when action of this nature has been induced at the request, and upon the instigation, of an individual, he ought not to be thereafter permitted, upon general principles of justice and equity, to claim that the action which he has himself instigated and asked for, and which has been taken upon the faith of his request, should be held invalid, and the expense thereof, which he ought to pay, transferred to a third person.

194 U.S. at 568, 24 S.Ct. at 742, 48 L. Ed. 1115.

In Ralston v. Cox, supra, the defendant in a criminal prosecution demurred to the indictment and was successful in

---

6. The district court also relied on Shirley-Herman Co. v. Internat'l Hod Carriers, etc., 2 Cir., 1950, 182 F.2d 806, and Alabama Cartage Co. v. International Brotherhood, 250 Ala. 372, 374, 34 So.2d 576 (1948), which indicate that the right to strike, as protected by the First Amendment, may be waived by a no strike clause in a prior collective bargaining agreement. Aside from the fact that it is clear in these cases that the right to strike was knowingly and intelligently waived in the collective bargaining agreements, it seems obvious that there is a difference between the right to strike and the privilege against self-incrimination and consequently a difference in the manner in which they may be relinquished.

striking one of the overt acts set forth therein and then attacked the indictment as being constitutionally deficient as a result and causing the trial court to lose jurisdiction. The Court held that he was estopped to claim that the trial court lost jurisdiction by the order induced by his own motion, saying:

> If constitutional rights may be waived, as is well settled, [footnote omitted] they are also subject to the legal principles of estoppel. * * * 123 F.2d at 198.

Thus in *Shepard* it was held that a person is equitably estopped from claiming that a statute is unconstitutional once he has availed himself of the benefits it provides,[7] and in *Ralston* it was held that a criminal defendant is estopped to assert as a constitutional infirmity of his conviction an error which he induced. Needless to say, these cases do not hold that a person can be estopped to assert the privilege against self-incrimination and are generally inapposite to the instant case. Appellee cites no federal case, and we can find none, which hold that a person can be equitable estopped from asserting the privilege.[8]

Indeed, we have grave doubts that such could be the case. As was said in Matsuo Yoshida v. Liberty Mutual Insurance Co., 9 Cir., 1957, 240 F.2d 824, 829–830, a case involving the application of equitable estoppel to the defense of no coverage in an action to recover under a policy of liability insurance:

> Waiver and estoppel are legal terms which are frequently used inter-changeably. Although the legal consequences of each are often the same, the requisite elements are different. Waivers refers to the voluntary or intentional relinquishment of a known right. It emphasizes the mental attitude of the actor. *On the other hand, estoppel is any conduct, express or implied, which reasonably misleads another to his prejudice so that a repudiation of such conduct would be unjust in the eyes of the law. It is grounded not on subjective intent but rather on the objective impression created by the actor's conduct. It is in the area of implied waiver that the two doctrines are closely akin.*

The Supreme Court has held, however, that the relinquishment of the privilege requires "an intentional relinquishment or abandonment of a known right or privilege". Brookhart v. Janis, supra, 384 U.S. at 4, 86 S.Ct. at 1247, 16 L.Ed. 2d 314. It is therefore doubtful whether objective conduct alone, without subjective knowledge or intent, can ever prevent a person from asserting the privilege.

However, we do not find it necessary to so hold, in view of our conclusion that an estoppel in pais cannot be made out here, even if the doctrine were held to apply. The district court takes the view that U.S.F.&G. was induced to write the bond for the Shively project by Morgan's promise to provide it with financial statements upon reasonable demand and that it relied on this promise to its detriment. It is clear upon close analysis, however, that

---

7. See also, e. g. Pierce Oil Corp. v. Phoenix Refining Co., 259 U.S. 125, 42 S.Ct. 440, 66 L.Ed. 855 (1922).

8. None of the other federal cases relied upon by U.S.F. & G. in its equitable estoppel argument involved the assertion of constitutional rights, much less the assertion of the privilege against self-incrimination. See Glus v. Brooklyn Eastern District Terminal, 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959) (statute of limitation); Dickerson v. Colgrove, 100 U.S. 578, 25 L.Ed. 618 (1880) (con-flicting claims to the ownership of land); Investors Syndicate v. City of Indian Rocks Beach, Fla., 5 Cir., 1970, 434 F.2d 871 (redemption of municipal bonds); United States for Use and Benefit of Humble Oil & Refining Co. v. Fidelity and Casualty Co. of New York, 4 Cir., 1968, 402 F.2d 893 (statute of limitations); Robinson v. Commissioner of Internal Revenue, 6 Cir., 1939, 100 F.2d 847, cert. den. 308 U.S. 567, 60 S.Ct. 81, 84 L.Ed. 476 (false representations in estate tax return).

the inducement upon which U.S.F.&G. relied in writing the bonds here in question was Morgan's promise to indemnify U.S.F.&G. for any loss and the assets that stood behind this promise, not his promise to provide U.S.F.&G. with financial statements. As the Mississippi Supreme Court observed in its opinion affirming the decree awarding indemnity:

Morgan executed the indemnity agreements in the negotiated jobs as indemnitor. He did this under an agreement with Hyde that he would receive a commission of two and one-half per cent of the contract price for acting as indemnitor or guarantor. The proof shows that he actually received this consideration to the tune of many thousands of dollars. Thus Morgan received a benefit for signing the indemnity agreements. It is not necessary that the consideration move from the indemnitee to the indemnitor, but it is necessary only that there be a valid consideration to support the agreement. Furthermore, the proof in this case shows that there was an agreement between Bates, acting for Guaranty Company, and Morgan, that Morgan would execute all bond applications on jobs in which Morgan and Hyde were interested. It is a general rule that a guaranty of a preexisting debt or obligation of another is not binding on the guarantor without a new and independent consideration to support it. However, an exception to this rule is when the guaranty is connected with, and the inducement to the original credit or obligation, or a result of a previous promise by the guarantor upon the faith of which the credit was obtained, it requires no new or independent consideration, but is a part of the original transaction and the consideration upon which the credit was given. Standley v. Miles & Adams, 36 Miss. 434 (1958). *The antecedent promise of Morgan was the inducement to Guaranty Company to make the payment and performance bonds on the negotiated jobs, and was part of the consideration upon which the bonds were executed.* (Emphasis supplied.)

Morgan v. United States Fidelity & Guaranty Co., supra, 191 So.2d at 917–923. The tenuousness of this position is further demonstrated by the fact that while there were twelve bonds involved in the action for indemnity, the application of only one, the application for the Shively bond, contained the paragraph requiring financial statements and other financial information.

III. *Conclusion.*

In view of our holding here that Morgan has neither waived his privilege against self-incrimination by prior contract, nor is estopped to assert it by his conduct, the order of the district court must be reversed and the matter remanded for the entry of an order directing the Chancery Court of Hinds County, Mississippi, to vacate its contempt decree and release Morgan from its effects.

■ This resolution, however, does not necessarily mean that Morgan cannot be required to provide the information demanded by the chancellor's decree. It is clear that the information "may be compelled regardless of the privilege if there is immunity from federal and state use of the compelled testimony or its fruits in connection with a criminal prosecution against" Morgan. Gardner v. Broderick, supra, 392 U.S. at 276, 88 S.Ct. at 1915, 20 L.Ed.2d 1082. See Murphy v. Waterfront Commission of New York, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964), and Counselman v. Hitchcock, 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110 (1892). It would be presumptuous for this Court to hold that an adequate immunity was available under Mississippi law and then order that Morgan be afforded this immunity. Thus, we leave the matter in the good hands of the courts of Mississippi. Morgan can be compelled to testify only if he is granted prior immunity from prosecution by the State of Mississippi.

The order of the district court is hereby reversed and remanded with directions.

Reversed and remanded.

GEWIN, Circuit Judge (concurring in part and dissenting in part):

Although I agree with much that has been said by my brothers in the majority opinion, I am unable to agree with all of their reasoning or with the result they reach. With complete deference and full respect for their well articulated views, I feel compelled to dissent in part.

While it may be presumptuous for this court to hold that adequate immunity is available to appellant Morgan under Mississippi law, I do not believe such a holding to be necessary under the issues presented. Moreover, nothing said in this dissent is meant to reflect unfavorably upon "the good hands of the courts of Mississippi." Stated simply, it is my feeling that the State of Mississippi should not allow one court of the state, albeit a civil court acting in civil litigation to compel a citizen to testify and make disclosures and then permit another court of the same state judicial system to use such evidence or disclosures in a criminal prosecution. The record does not indicate to me that the state proposes to follow such a course of action. The protections of the Fifth Amendment are applicable in every state and in every court. Otherwise the Supremacy Clause of the United States Constitution, Article VI, Clause 2,[1] would be meaningless. If appellant Morgan is required to obey the Chancellor's decree after vigorously asserting his Fifth Amendment rights, he should not then be subject to criminal prosecution based on such disclosures.

I would require appellant Morgan to obey the Chancellor's decree, or suffer the consequences of disobeying the civil contempt order subject to full immunity as indicated. This is not to say that there is any restriction or limitation upon the appropriate court or courts of Mississippi to modify or set aside the decree under consideration. Conceivably, the Fifth Amendment questions now presented in this case in its present form could be eliminated or become less important if the Chancellor's decree should be modified or set aside. In deciding that issue the state courts of Mississippi would pass upon questions of compelling state interest in the procedures of that state.

Moreover, there is absolutely nothing in the record to suggest that there is any actual or real threat of a criminal prosecution by the State of Mississippi; but if such a prosecution does arise, Mr. Morgan should then be accorded complete immunity with respect to all evidence given and all disclosures made in obeying the Chancellor's decree. There is not the slightest suggestion that any federal criminal statute is involved.

We do not know whether appellant Morgan has removed any property from the state subject to a judgment lien, with intent to defraud. See § 2250, Code of Mississippi of 1942, recompiled. The other Mississippi statute, § 2252, gives the debtor the option of avoiding a criminal prosecution by discharging the lien or paying to the holder of such lien the value of the property involved in the event the same is less than the amount of lien. Both statutes appear to be misdemeanors only.

There is ample evidence in the record to support the conclusion that appellant Morgan was the moving influence in all of the transactions under consideration. Large sums of money are involved. He

---

1. "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the *supreme Law* of the Land; and *the Judges in every State* shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." (emphasis added)

made representations, promises and assurances in order to induce others to act. He profited from the transactions under consideration and asserted that he was well able to indemnify and protect those who were induced to act at his behest. Thus having induced, persuaded, promised and contracted to repay sums of money which he caused others to lose, he should be required now to face the day of judgment. He should not be permitted to nullify the Chancellor's decree by suggesting an imaginary and elusive possibility of a criminal prosecution for a misdemeanor which he could surely and certainly escape by returning the property, if any, which may be subject to a judgment lien. In that sense he holds the key to the prison door. I gain the distinct impression that Mr. Morgan's fear arises from the requirement of making the disclosures ordered rather than from the possibility of criminal prosecution for a relatively minor crime which does not appear to be imminent. Therefore I would require Mr. Morgan to obey the Chancellor's decree in its present form, subject to the limitations herein expressed.[2]

### ON PETITION FOR REHEARING AND PETITION FOR RE-HEARING EN BANC

**PER CURIAM:**

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.

Gewin, C. J., dissents from the denial of the petition for rehearing and the petition for rehearing en banc.

---

2. See, *e. g.*, Pennock v. West, 23 Pa.Dist. R. 1062, 43 Pa.Co.R. 16 (1914); Reese v. Baker, 98 Fla. 52, 123 So. 3, (Fla.1929); Annot. 106 A.L.R. 383 (1937).